84 F.3d 1453
 318 U.S.App.D.C. 79
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
OCEAN STATE POWER, et al., Petitioners,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Bay State Gas Company, et al., Intervenors.
 Nos. 95-1002, 95-1198.
 United States Court of Appeals, District of Columbia Circuit.
 April 22, 1996.
Rehearing and Suggestion for Rehearing In Banc Denied June 28, 1996.
 
 Before: WALD, WILLIAMS, and TATEL, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This petition for review was considered on the record from the Federal Energy Regulatory Commission and on the briefs and arguments by both parties. The court has determined that the issues presented occasion no need for a published opinion. See D.C.Cir.Rule 36(b). For the reasons stated in the attached memorandum, it is
 
 
 2
 ORDERED and ADJUDGED that the petition for review from the following orders of the Federal Energy Regulatory Commission be denied: Tennessee Gas Pipeline Co., 67 FERC p 61,400 (1994); JMC Power Projects, 69 FERC p 61,162 (1994); and JMC Power Projects, 70 FERC p 61,168 (1995).
 
 
 3
 The Clerk is ordered to withhold issuance of the mandate herein until seven days after disposition of any timely petitions for rehearing. See D.C.Rule 41.
 
 ATTACHMENT
 MEMORANDUM
 I.
 
 4
 In June 1991, the Tennessee Gas Pipeline Company proposed a settlement covering virtually all of the matters relating to it that were pending before the Federal Energy Regulatory Commission. The settlement provided a mechanism for Tennessee to recover a portion of its "take-or-pay" costs: Tennessee would absorb 50% of the take-or-pay costs, recover 41.78% through a fixed charge imposed on its sales customers, and recoup the remaining 8.22% through a volumetric surcharge imposed on all throughput on the system. The settlement proposed collecting the volumetric surcharge from both "open access" shippers, who send gas through the pipeline under an umbrella contract, and "section 7(c) shippers," who ship gas on the pipeline under individual contracts approved pursuant to section 7(c) of the Natural Gas Act, 15 U.S.C. § 717f(c) (1994). Under the settlement, parties could elect "contesting" or "non-contesting" status. As initially proposed, a party electing non-contesting status agreed to accept the settlement without further court appeal if the Commission approved the settlement as filed or with changes suggested by the party; a party electing contesting status would preserve its rights to challenge the agreement, but it would not be entitled to certain services provided by the settlement.
 
 
 5
 JMC Power Projects, a group of section 7(c) shippers, filed comments on the proposed settlement. Stating that "the settlement in most respects provides for an equitable balancing of interests between Tennessee and its customers" and "merits the approval of the Commission, substantially as filed," JMC elected non-contesting status. Petitioners' Br., App. A at 4. The petitioners raised two objections to the proposed settlement. Noting that, unlike Tennessee's sales customers, they had no role in Tennessee's incurring its take-or-pay costs, and unlike open access shippers, they derived no benefits from the conversion to the open access regime that had exacerbated the take-or-pay problem, they argued that requiring them to pay the volumetric surcharge to defray Tennessee's take-or-pay liabilities was unfair, unless the settlement also provided them with certain essential services offered to open access shippers. The petitioners also supported the comments made by other parties that the proposed settlement unfairly coerced customers to elect "non-contesting" status by denying parties that chose to contest the agreement essential services on the Tennessee system.
 
 
 6
 Over JMC's objections, the Commission tentatively approved the proposed settlement in December 1991, including the take-or-pay surcharges. Tennessee Gas Pipeline Co., 57 FERC p 61,360 at 62,168 (1991). In a petition for rehearing, JMC's members subsequently reaffirmed their non-contesting status. They also reiterated their objections to the imposition of the volumetric take-or-pay surcharge, but not to the provisions governing the election of non-contesting status. See Petitioners Br., App.B at 2-4 (objecting to Commission's interpretation of non-contesting provisions, not to provisions themselves).
 
 
 7
 On rehearing in April 1992, the Commission modified and approved the settlement. Tennessee Gas Pipeline Co., 59 FERC p 61,045 (1992). Once again, it approved the volumetric take-or-pay surcharge for section 7(c) shippers. Id. at 61,176-77. Because section 7(c) shippers could convert to open access status if they chose to do so, the Commission declined to modify the settlement to give section 7(c) shippers the same benefits given open access shippers. Id. at 61,195. Agreeing with other commentors that the settlement had the potential to coerce parties into electing non-contesting status at the expense of losing essential services, the Commission approved the essential services set forth in the settlement "on the merits," so that contesting and non-contesting parties alike would enjoy those services, id. at 61,173-74. The Commission also approved the volumetric take-or-pay surcharge on the merits. Id. at 61,176-77.
 
 
 8
 In its April 1992 decision, the Commission noted that it was "considering making significant generic changes in its regulation of interstate natural gas pipelines" as part of Order No. 636. Id. at 61,171. Accordingly, the Commission stated "that any provisions of [the] settlement that may be inconsistent with [Order No. 636] will apply only until Tennessee has to file to comply with [that] final rule," thereby making it an "interim settlement with respect to issues covered by" Order No. 636. Id. The preamble to Order No. 636 stated that all shippers, including section 7(c) shippers, would enjoy certain essential services under the new regime, including capacity reallocation--i.e., the right to reallocate their firm capacity to other shippers. FERC Statues and Regulations Preambles p 30,939 at 30,418 (1992).
 
 
 9
 On May 7, after further negotiation, Tennessee proposed an amended settlement, which retained the volumetric surcharge, but did not grant the petitioners the open access services they had sought. Several days later, JMC requested that the Commission either reconfirm the statement in its April order that section 7(c) shippers could convert to being open access shippers on Tennessee's system, or, in the alternative, to rehear and modify the settlement to ensure that section 7(c) shippers would receive certain essential services made available to open access shippers, specifically capacity reallocation and flexible receipt and delivery points. In response, and after further negotiation with petitioners, Tennessee filed initial comments to its amended settlement that, while not changing the volumetric surcharge, for the first time provided that section 7(c) shippers would be able to enjoy capacity reallocation and flexible receipt and delivery rights. The petitioners not only supported Tennessee's new proposal, but also withdrew their conditional request for rehearing "to the extent the Commission accept[ed]" Tennessee's latest proposal. Petitioners' Br., App. D at 3.
 
 
 10
 On June 25, 1992, the Commission substantially approved the amended settlement, including approving all the disputed issues (other than the fixed take-or-pay surcharge) on the merits. Tennessee Gas Pipeline Co., 59 FERC p 61,361 (1992). Consistent with its April order, the Commission approved certain essential services--including the rights to capacity assignment and flexible delivery and receipt--for all shippers, including section 7(c) shippers, on an interim basis until the earlier of October 1, 1993 or Tennessee's implementation of Order 636. Id. at 62,359, 62,361. It approved the volumetric surcharge, however, on a "permanent" basis: the settlement provided that the volumetric surcharge would not be affected by any subsequent court or Commission orders. See JMC Power Projects, 70 FERC p 61,168 at 61,528 (1995) (quoting Appendix D of settlement).
 
 
 11
 In the wake of the June 25th order, petitioners maintained their non-contesting status, never requesting a rehearing or seeking judicial review. See id. at 61,58 n. 13. Subsequent events undoubtedly caused petitioners to question the wisdom of their decision not to challenge the June 25th order. The first of these events occurred on August 12, 1992, when the Commission issued Order No. 636-A, declaring that, contrary to the preamble of Order No. 636, section 7(c) shippers would not be granted capacity reallocation rights. FERC Statutes and Regulations Preambles p 30,950 at 30,565 (1992). This meant that petitioners would enjoy their capacity reallocation and flexible receipt rights on only a temporary basis until the earlier of October 1, 1993 or Tennessee's implementation of Order 636.
 
 
 12
 The second event--actually a series of events--began with this court's decision in KN Energy, Inc. v. FERC, 968 F.2d 1295 (D.C.Cir.1992). There, we stated that while "charging § 7(c) [shippers] with some portion of take-or-pay costs ... is not inherently inconsistent with the requirement of reasoned decisionmaking[, t]he orders [then] before us [did] not ... reflect such decisionmaking." Id. at 1304. Responding to this court's concerns about the reasonableness of requiring section 7(c) shippers to bear a portion of a pipeline's take-or-pay costs, the Commission acknowledged on remand that there was indeed "an insufficient basis to require the section 7(c) shipper to bear any take-or-pay costs" in that case. Williston Basin Interstate Pipeline Co., 63 FERC p 61,171 at 62,175 (1993).
 
 
 13
 Order 636-A and the KN Energy litigation not only indicated that the open access services would come to an end after the interim period provided by the settlement agreement, but also cast doubt on the reasonableness of requiring section 7(c) shippers who do not receive such services to bear a portion of pipelines' take-or-pay costs. In response, in March 1994 JMC filed a complaint pursuant to section 5 of the Natural Gas Act, 15 U.S.C. § 717d (1994), asking the Commission to find it unjust and unreasonable for Tennessee to continue collecting the volumetric surcharge from JMC. JMC argued that this case was indistinguishable from KN Energy and Williston. And when Tennessee filed new tariff sheets in May 1994 pursuant to section 4 of the Natural Gas Act, 15 U.S.C. § 717c (1994), to recover an additional $68,574 in take-or-pay costs that it incurred between December 31, 1990 and July 1, 1992, petitioners objected. Echoing their section 5 complaint, they argued that KN Energy and Williston, as well as the later decision in Transcontinental Gas Pipe Line Corp., 66 FERC p 61,274 (1994), precluded Tennessee from recovering these additional expenses.
 
 
 14
 The Commission dismissed JMC's section 5 complaint on November 4, 1994 and denied rehearing on February 13, 1995. JMC Power Projects v. Tennessee Gas Pipeline Co., 69 FERC p 61,162 (1994), reh'g denied, 70 FERC p 61,168 (1995). The Commission denied petitioners' section 4 protest on June 30, 1994, later denying rehearing as part of its November 4, 1994 order in the section 5 proceeding. Tennessee Gas Pipeline Co., 67 FERC p 61,400 at 62,357 (1994); 69 FERC p 61,162 at 61,613-614. Petitioners now ask us to set aside the Commission's orders in both the section 5 and the section 4 proceedings and to prohibit the Commission from continuing to impose the volumetric take-or-pay surcharge on JMC.
 
 II.
 
 15
 We first address the Commission's argument that we lack jurisdiction to hear the petitioners' appeal because they failed to comply with section 19(a) of the Natural Gas Act, 15 U.S.C. 717r (1994). The Commission does not dispute that, as required by section 19(a), the petitioners requested rehearing within 30 days of the Commission's November 4, 1994 order and sought judicial review within 60 days of the Commission's February 13, 1995 rehearing decision. Instead, the Commission contends that petitioners are not really challenging the 1994 and 1995 orders, but are actually objecting to the June 1992 order approving the settlement. Because the petitioners did not seek rehearing or judicial review of the June 1992 order within the timetable set forth in section 19(a), the Commission argues that we lack jurisdiction to hear their current petitions.
 
 
 16
 Were petitioners simply making the same arguments now that they could have raised in challenging the 1992 settlement, we might agree with the Commission that their failure to file petitions at the time would bar our hearing their arguments. See Tennessee Gas Pipeline Co. v. FERC, 871 F.2d 1099, 1109-1110 & n. 18 (D.C.Cir.1989). But that is not the case. Even if petitioners could have sought review of the June settlement order based on Order No. 636-A or our decision in KN Energy--both occurred during the sixty-day period for petitioning for judicial review--the linchpin of petitioners' current challenge in the section 5 proceeding is the Commission's decision in Williston declaring it unreasonable to impose a volumetric surcharge on section 7(c) shippers. Since the Commission decided Williston in 1993 long after the period for challenging the June 1992 order had expired, JMC could not possibly have raised this argument in connection with the June 1992 order. The petitioners also rely on Williston in their challenge to the additional take-or-pay expenses in the section 4 proceeding, as well as on Transco, which the Commission did not issue until 1994.
 
 
 17
 Even if petitioners' arguments were the same, the nature of the Commission's decision in the section 5 proceeding was fundamentally different from its decision approving the settlement order. In approving the settlement, the Commission assessed the underlying merits of the agreement to determine whether it was " 'fair and reasonable and in the public interest.' " 57 FERC p 61,360 at 62,166 n. 14 (quoting 18 C.F.R. § 385.602(g)(3) (1991)). By contrast, as we discuss below, in dismissing the section 5 complaint, the Commission did not "substantively revisit[ ] and approve[ ] the settlement provisions as just and reasonable," but limited itself to determining whether it was appropriate to initiate a section 5 proceeding. Southern Union Gas Co. v. FERC, 840 F.2d 964, 968 (D.C.Cir.1988). Indeed, by asking us to review its decision in the section 5 proceeding under the deferential standard we announced in General Motors v. FERC, 613 F.2d 939, 944-45 (D.C.Cir.1979), rather than the traditional arbitrary and capricious criteria in the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) (1994), the Commission itself has implicitly acknowledged this difference. We do not see how petitioners' failure to challenge the Commission's substantive decision in approving the settlement in 1992 could possibly preclude us from reviewing the Commission's later procedural decision to dismiss the complaint in the section 5 proceeding.
 
 
 18
 We therefore find the Commission's jurisdictional arguments without merit.
 
 III.
 
 19
 The Commission argues that we should review its section 5 ruling under the deferential General Motors standard, which requires only that the Commission "consider the [petitioners'] arguments and ... exercise its discretion." Southern Union Gas Co., 840 F.2d at 970. Although we developed the General Motors standard in a somewhat different context--namely, where petitioners asked the Commission to conduct formal hearings or investigations under section 5, see General Motors, 613 F.2d at 943-944; Southern Union Gas Co., 840 F.2d at 967--we have not limited the standard to that situation. See Southern Union Gas Co. at 968 (noting that the General Motors standard applies when the agency decides "not to investigate or otherwise substantively revisit the terms of [a] settlement agreement"). We see no reason not to apply the General Motors standard where, as here, petitioners requested that the Commission act under section 5 without specifying the type of proceedings the Commission should conduct, so long as the Commission's decision was essentially a determination not to proceed to the merits, rather than "a summary disposition on the merits." Id.
 
 
 20
 Although a close question, we agree with the Commission that its decision qualifies for review under General Motors. The Commission framed the issue as whether it would be "[ ]appropriate to initiate action under NGA section 5 to modify Tennessee's cosmic settlement." 69 FERC p 61,162 at 61,610 (emphasis added); see also 70 FERC p 61,168 at 61,526 & n. 9. In deciding not to proceed, the Commission noted that petitioners could challenge the take-or-pay costs in other proceedings, including those relating to the Commission's issuance of Order No. 636-A. See 69 FERC p 61,162 at 61,612 & n. 32. To us, this demonstrates that the agency was concerned about the efficient deployment of its resources, the hallmark of a decision qualifying for review under General Motors. See Southern Union Gas Co., 840 F.2d. at 968. The Commission considered other equitable factors that, while perhaps relevant to the underlying fairness of the volumetric surcharge itself, also pertained to the appropriateness of using agency resources to commence a section 5 proceeding. Specifically, the Commission noted that the take-or-pay charges were a temporary measure, effective only until the pipeline has fully amortized these costs; that the surcharge was imposed in the context of a settlement agreement and that modifying it would adversely affect the expectations of other parties; that, if the petitioners were truly concerned about receiving the services given to open-access shippers, they could have converted to open-access transportation, apparently declining to do so because of additional costs associated with such a move. 69 FERC p 61,162 at 61,610-13; 70 FERC p 61,168 at 61,526-32. To be sure, the Commission considered petitioners' argument that KN Energy and Williston established that the volumetric surcharge was per se unreasonable. Id. Although this last factor clearly goes to the merits, the Commission may consider such issues without forfeiting General Motors review, so long as it confines itself to determining whether the parties have raised a colorable legal argument that justifies proceeding with section 5 inquiry. See Southern Union Gas Co., 840 F.2d. at 968-69 & n. 5. The Commission could therefore determine, as part of its analysis, that KN Energy and Williston did not even call into question the lawfulness of the volumetric surcharge.
 
 
 21
 Applying the General Motors standard, we have no doubt that the Commission's decision to dismiss the section 5 complaint passes muster. As petitioners conceded at oral argument, "the Commission did a very good job [in considering their arguments.] ... Everything that [they] would have wanted the Commission to do, the Commission did." Tr. at 12. We therefore conclude that the Commission exercised its considered discretion in deciding not to commence a section 5 proceeding, thus denying the petition for review of this ruling.
 
 IV.
 
 22
 We review the Commission's decision to allow Tennessee to recover the additional $68,000 in take-or-pay expenses in the section 4 proceeding under the APA's arbitrary and capricious standard. North Carolina Utilities Comm'n v. FERC, 42 F.3d 659, 663 (D.C.Cir.1994).
 
 
 23
 In their protest before the Commission, petitioners argued that the agency lacked authority under KN Energy and Williston to impose take-or-pay costs on section 7(c) shippers who do not receive open access benefits. Distinguishing this case from KN Energy and Williston, the Commission pointed out that this case involves a settlement and the petitioners voluntarily agreed to assume the volumetric surcharge as part of that settlement. The Commission thus found it fair and reasonable to hold the petitioners to the bargain they negotiated and accepted in 1992. 69 FERC p 61,162 at 61,613-14.
 
 
 24
 Petitioners argue here that because the Commission approved the volumetric surcharge "on the merits," imposing it on customers regardless of whether they contested the settlement, the settlement is irrelevant. The fact that the Commission approved the surcharge on the merits, however, does not render the settlement irrelevant. The settlement is relevant not because it technically imposes the volumetric surcharge on non-contesting parties like the petitioners. Indeed, whether the Commission imposed the volumetric surcharge on non-contesting parties through the settlement or by virtue of its decision on the merits is not even clear from the record. Compare 59 FERC p 61,045 at 61,177; Tennessee Gas Pipeline Co., 59 FERC p 61,361 at 62,342 (stating that non-contesting parties would be required to pay the volumetric surcharge because it was part of the settlement agreement, not because it was approved on the merits) with 59 FERC p 61,361 at 62,343 (stating that "the merits resolution of [all disputed issues, other than the fixed take-or-pay surcharge] applies to all parties regardless of whether they are considered contesting or non-contesting"). Rather, the settlement is relevant because the petitioners' agreement to shoulder a percentage of the pipeline's take-or-pay surcharges as part of a series of trade-offs in 1992 makes it fair and reasonable for the Commission to require petitioners to bear additional take-or-pay expenses pursuant to that agreement in 1994. See 69 FERC p 61,162 at 61,613-14.
 
 
 25
 The petitioners claim they never specifically consented to the volumetric surcharge, instead opposing it at every step of the way. We disagree. Because petitioners maintained their non-contesting status to the settlement throughout the proceedings, they demonstrated their willingness to abide by the settlement as a whole while objecting to specific provisions. Moreover, petitioners' last objection to the surcharge was only conditional; in response to the April 1992 order, they primarily sought clarification that they could switch to being open access status, requesting rehearing only if the Commission failed to grant that clarification. Petitioners' Br., App. B at 4. Subject to the Commission approving Tennessee's proposal to provide capacity reallocation and flexible delivery and receipt rights to section 7(c) shippers, petitioners then withdrew even that conditional rehearing request. Although the Commission arguably did not give petitioners everything they might have hoped for--the Commission approved capacity allocation and flexible delivery rights for section 7(c) shippers only on an interim basis--petitioners never cried foul. Despite the order's guarantee of certain essential services only as an interim measure, they failed to request a rehearing on any aspect of the settlement. Nor did petitioners seek judicial review of the June order, even though admitting they could have done so. 70 FERC p 61,168 at 61,528 n. 13; JA at 94, 107. In these circumstances, it seems clear to us, as it did to the Commission, that petitioners accepted the volumetric surcharge as fair exchange for the services they received under the order.
 
 
 26
 Petitioners nonetheless argue that, even if they had agreed to the volumetric surcharge, Transco bars the Commission from imposing "new" take-or-pay costs on the settling parties. We agree with the Commission that Transco is distinguishable. In Transco, the Commission refused to allow a pipeline to recover certain additional take-or-pay costs that were not covered by a settlement agreement from shippers who had consented to that agreement. The "new" costs in that case arose out of the Commission's decision to exempt one of the pipeline's other customers from sharing in the take-or-pay costs. The Commission rejected the pipeline's effort to shift those costs to the settling parties. 66 FERC p 61,274 at 61,765. By contrast, here the "new" take-or-pay expenses arose from settlements that Tennessee negotiated with gas suppliers prior to July 1, 1992, and the settlement clearly envisioned Tennessee recovering additional costs incurred as a result of such agreements. 67 FERC p 61,400 at 62,355; 69 FERC p 61,162 at 61,606. Transco thus casts no doubt on the Commission's ruling.
 
 
 27
 Because petitioners consented to the volumetric surcharge as part of an overall settlement, and because the additional $68,000 of take-or-pay expenses falls squarely within the scope of the settlement, the Commission acted reasonably in requiring petitioners to bear their portion of these additional costs. We accordingly deny the petition for review of the Commission's ruling in the section 4 proceeding.